1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

### EASTERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| RICHARD FRANCIS BAKER, | ) 1:10-cv-1504 LJO-BAM |
| Plaintiff, | ) **ORDER ON PARTIES' CROSS-MOTIONS** |
| v. | ) **FOR SUMMARY JUDGMENT** |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
| Defendant. | ) |

11
12
13
14
15
16
17
18

### BACKGROUND

19     Plaintiff Richard Francis Baker ("Plaintiff") seeks judicial review of a final decision of the

20 Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for

21 disability insurance  benefits pursuant to Title II of the Social Security Act.   Before the Court is

22 Plaintiff's Motion for Summary Judgement (Doc. 11); the Commissioner's Cross-Motion for

23 Summary Judgment (Doc. 12); and Plaintiff's Reply Brief (Doc. 13).  The parties consented to

24 proceed before United States Magistrate Judge Barbara A. McAuliffe for all proceedings, including

25 trial and final judgment, pursuant to 28 U.S.C. 636(c) and Federal Rule of Civil Procedure 73. (Docs.

26 3&8).  Having considered the parties' briefing, the applicable legal authorities, and all matters of

27 record, Plaintiff's motion is denied and summary judgment is granted for the Commissioner.

28

## FACTS AND PRIOR PROCEEDINGS

On July 24, 2001, Plaintiff filed his first applications for disability insurance benefits (DIB) under Title II, of the Social Security Act (the Act), alleging disability beginning June 21, 2001. AR 57.[1] This application was ultimately denied by an Administrative Law Judge (ALJ), who issued a November 21, 2002 decision finding Plaintiff not disabled.  AR 57. Plaintiff did not appeal this ALJ decision.

On September 12, 2007, Plaintiff filed another application for DIB, alleging disability beginning June 21, 2001. AR 9-18. Plaintiff's application was denied initially and on reconsideration, and Plaintiff requested a hearing before an ALJ. AR 75, 82.  ALJ Sharon Madsen held a hearing on June 16, 2009, and issued an order denying benefits on September 17,  2009, finding Plaintiff was not disabled. AR 9-18.  This appeal followed.

### Relevant Medical Record

The record is summarized here in chronological order with particular regard to the medical record relevant to Plaintiff's claims of Post Traumatic Stress Disorder ("PTSD").  Nonetheless, the record as a whole was reviewed and will be specifically referenced as necessary to this Court's decision.  AR 278-517.

Plaintiff is a noncompliant diabetic who suffers with eye and back problems.  AR 14.[2]  He predominantly challenges the ALJ's findings related to PTSD stemming from his military service in Vietnam from May 6, 1968 to November 3, 1970.

On January 14, 2002, Plaintiff applied for disability benefits through the Veterans Administration ("VA") for disability related to his military service.  AR 376. Specifically, Plaintiff claimed entitlement to nonservice-connected pension; service connection for vision impairment due

---

[2]     References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

[3]     VA Progress notes from October 2008 reflect that Plaintiff was noncompliant regarding his medications for diabetes and hypertension. AR 346.  Plaintiff had a history of fair control of his diabetes, but control "may have deteriorated due to noncompliance recently." AR 346.  Plaintiff had previously reported that he did not wish to have insulin.  AR 332.

to optic atrophy as a result of exposure to herbicides; and service connection for post traumatic stress disorder, hearing loss and tinnitus.  AR 376.  On November 8, 2002, the VA deferred a disability rating for PTSD, hearing loss and tinnitus for additional evidence, including VA examinations.  AR 376-77.  On January 1, 2005, the VA awarded Plaintiff a total disability evaluation due to individual unemployability effective January 14, 2002.  AR 123.  The VA stated that the evidence revealed that "Plaintiff was unable to secure and follow a substantially gainful occupation as a result of [his] service-connected post traumatic stress disorder (PTSD)."  AR 124.

Plaintiff began treatment for PTSD in October 2002.  On October 22, 2002, Gail Hendershot, Licensed Clinical Social Worker, completed a functional capacity assessment and recommendation for Plaintiff.  AR 360-71.  Ms. Hendershot noted that Plaintiff had never received psychotherapeutic services before and had been referred to her for an evaluation of his military-related concerns.  AR 360.   She found that Plaintiff presented with symptoms of PTSD, panic disorder, and depression. AR 362.  She also noted that there "does not appear to be any impairment in the area of cognition, judgment or intellectual functioning," and that Plaintiff's affect appeared to be guarded, but open. AR 363.  Ms. Hendershot opined that Plaintiff had numerous "marked" limitations regarding his ability to perform tasks involving understanding and memory, sustained concentration and persistence, social interaction, and adaptation.  AR 364-67.

On December 4, 2006, VA staff physician Kyin Kyin Oo, M.D. screened Plaintiff for PTSD. The PTSD screening showed positive based upon Plaintiff's self-reported symptoms.  AR 254-55. However, further evaluation of the same date reflected a false positive screen for PTSD.  AR 250-51. In particular, Plaintiff stated that he had not experienced an event that involved actual or threatened death or serious injury to him or someone else that caused him to experience intense fear, helplessness or horror.  AR 251.  Plaintiff stated he was "ok" and did not need psychiatric help.  AR 251.  Accordingly, Dr.Kyin Kyin Oo, concurred that no further evaluation was needed at the time. AR 250-52.

On October 4, 2007, state agency medical consultant Brian Ginsburg, M.D., completed a psychiatric review technique form, assessing Plaintiff from 2003 until December 2006.  AR 161.

Dr. Ginsburg found no medically determinable mental impairment, noting that Plaintiff did not allege any mental problems and that the medical records did not show any mental problems. AR 161, 171. State agency medical consultant and psychiatrist Evelyn E. Aquino-Caro, M.D., also completed a psychiatric review technique form on October 5, 2007, and found no medically determinable mental impairment. AR 172.

On January 29, 2008, state agency medical consultant Ernest E. Wong, M.D., found that Plaintiff had no exertional limitations, no postural limitations, and no manipulative limitations. AR 186-89. Dr. Wong found that Plaintiff had a limited field of vision, but no other visual limitations. AR 189. He found that Plaintiff should avoid concentrated exposure to hazards. AR 190.

On September 19, 2008, Plaintiff again underwent PTSD screening at the VA with Dr. Kyin Kyin Oo, which yielded negative results. AR 349-51. The progress notes indicated that further intervention was available, but plaintiff refused. AR 351. The progress notes also concluded that Plaintiff did not have a mental health condition requiring further intervention. AR 351. Plaintiff reported that he had received treatment for two years, which had helped, and that he felt he had control over the problem and did not need further treatment. AR 351.

**2009 Hearing Testimony**

ALJ Madsen held a hearing on September 27, 2009, in Fresno, California. Plaintiff appeared and testified. He was represented by attorney Robert D. Christenson. Vocational Expert ("VE") Jose L. Chapparro also testified. AR 9. Additional evidence was submitted at and after the hearing and was subsequently reviewed. AR 9.

Plaintiff was born on December 19, 1949 and was fifty-nine years old at the time of the hearing. He is five feet seven inches tall and weighs about 200 pounds. AR 8-9. At the time of the hearing, Plaintiff testified that he is married and lives with his wife—a housewife—and his 17 year old step-daughter. AR 13. He has an 11th grade education with additional vocational training received in the military. AR 13. Plaintiff said that he previously worked as a truck driver and did some loading in connection with his job. AR 27-28.

Plaintiff testified he was receiving  disability benefits from the VA based for his service-connected PTSD. AR 24, 43. When asked about his PTSD, Plaintiff testified that he had issues from the time he spent in Vietnam. AR 35.  He still falls out of bed and attempts to roll under the bed to keep from getting shot at.  AR 36.   He has nightmares and often still sees himself walking through the jungle as if in a trance.  AR 36. Although this occurs daily, it does not happen every minute of the day.  AR 37.  Plaintiff also no longer watches war movies because they often fail to accurately depict military service and combat. AR 38.

Plaintiff  underwent therapy for PTSD two years from 2003 to 2005. AR 34-35, 37. Although he enjoyed talking to the therapist during that time, he had not  sought treatment in the two or three years prior to the hearing and was not taking any medication.  AR 35-36.  Plaintiff testified he still had nightmares and daily flashbacks in which he would fall into a trance. AR 35-37. However, when Plaintiff was focused on a task like working on his boat he only rarely experienced flashbacks. AR 37-38. Plaintiff plans to request treatment again for his PTSD. AR 35. With respect to his concentration, Plaintiff testified that if he was interested, his concentration was "pretty good," but also testified that he went off in a daze after ten or fifteen minutes, and got easily frustrated. AR 43.

As for physical functional limitations, Plaintiff testified that he could only carry a small bag of groceries or hand tools, could sit for one half hour, could stand for about five minutes, had problems walking, and had trouble bending and putting on his socks and shoes. AR 40-42.  Two or three days out of the week Plaintiff testified that he was "useless" and did not function very well. AR 44-45.

Asked to describe a typical day, Plaintiff testified he made coffee, watched the news, called his son, visited his son or worked on his boat, which he kept on a trailer.  AR 25-26. Plaintiff testified that he drives, and had no problem taking care of his personal needs.  AR 24.  He did some cooking, and does not shop too often.  AR 25. He loves his boat, and spends "all [his] summertime playing and the wintertime maintaining [it] as well as I can." AR 26-27.  He had about 20 fishing rods, and likes to fish in the mountains and at lakes as well.  AR 25.  He was not very good in the

1  yard, but did get the yard work "taken care of." AR 25-26.  Plaintiff also worked on his vintage cars.

2  AR 39.

3        Thereafter, the ALJ elicited the testimony of vocational expert Jose Chaparro. AR 46-53.

4  VE Chapparo indicated that Plaintiff performed past relevant work was a tractor-trailer truck driver;

5  medium and semi-skilled, performed as heavy. AR 46-47. VE Chapparo opined that Plaintiff could

6  not perform his past relevant work as a tractor-trailer truck driver.  AR 46.

7        The VE was asked to consider several hypothetical questions posed by the ALJ.  First, VE

8  Chapparo was asked to assume a hypothetical worker of Plaintiff's age, education, and work

9  experience with no exertional limits; but a limitation on activities requiring bilateral peripheral

10 vision.  AR 47.  VE Chapparo indicated such an individual could not perform Plaintiff's past

11 relevant work.  AR 47.  Nevertheless, such a worker could perform heavy unskilled work.

12       In a second hypothetical, VE Chapparo was asked to consider the same worker, with the

13 following abilities and/or limitations: can lift and/or carry fifty pounds occasionally and twenty-five

14 pounds frequently; can sit, stand or walk six hours in an eight-hour work day; but should avoid jobs

15 requiring depth perception or fine visual acuity, ramps, ladders, ropes and scaffolds. VE Chapparo

16 testified that this hypothetical worker could not perform Plaintiff's past work, but the individual

17 could perform work at the medium, unskilled level as it exists in the national economy.  AR 49.

18       In a third hypothetical, the VE was asked to assume a hypothetical worker of Plaintiff's age,

19 education, and work history, and can lift and carry twenty  pounds occasionally and ten pounds

20 frequently, can sit, stand or walk six hours in an eight-hour work day, and can only occasionally

21 stoop, crouch, crawl; but should avoid jobs requiring depth perception or fine visual acuity, climbing,

22 ramps, ladders, ropes and scaffolds and should never work at unprotected heights.  VE Chapparo

23 testified that this hypothetical worker could not perform Plaintiff's past work, but the individual

24 could perform work at the light, unskilled level, as it exists in the national economy.  AR 50.

25       In the fourth hypothetical, the VE was asked to consider the same individual as posed in the

26 third hypothetical with an additional limitation that the hypothetical worker is "unable to concentrate

27

28

1  for 30-minute increments;" the VE indicated that such an individual would be unable to perform

2  Plaintiff's past work or any work as it exists in the national economy.  AR 50.

3       Plaintiff's counsel asked the VE to consider the same individual as posed in the fourth

4  hypothetical with an additional limitation that the hypothetical worker has "marked limitations in

5  remembering simple or detailed instructions;" the VE indicated that such an individual would be

6  unable to perform Plaintiff's past work or any work as it exists in the national economy.  AR 51.

7  **ALJ's Findings**

8       Using the Social Security Administration's five-step sequential evaluation process, the ALJ

9  determined that Plaintiff did not meet the disability standard.  AR 9-18. More particularly, the ALJ

10  found that Plaintiff had not engaged in substantial gainful activity since June 21, 2001.  AR 11.

11  Further, the ALJ identified ischemic optic neuropathy of the left eye and lumbar degenerative disc

12  disease as severe impairments.  AR 10.  Nonetheless, the ALJ determined that the severity of the

13  Plaintiff's impairments did not meet or exceed any of the listed impairments.  AR 11.

14       Based on his review of the entire record, the ALJ determined that Plaintiff has the residual

15  functional capacity ("RFC") to lift and carry fifty pounds occasionally and twenty-five pounds

16  frequently, can walk and/or stand for six hours, as well as sit for six hours, in an eight-hour workday,

17  but must avoid tasks requiring depth perception or fine visual acuity and must avoid hazards such

18  as unprotected heights, dangerous machinery and climbing of ladders, ropes or scaffolds. AR 13.

19       Next, the ALJ determined that Plaintiff was unable to perform his past relevant work.

20  Nevertheless, considering Plaintiff's age, education, work experience and RFC, the ALJ determined

21  there were jobs that existed in significant numbers in the national economy that Plaintiff could

22  perform. AR 17-18.

23  **SCOPE OF REVIEW**

24       Congress has provided a limited scope of judicial review of the Commissioner's decision to

25  deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, this

26  Court must determine whether the decision of the Commissioner is supported by substantial

27  evidence.  42 U.S.C. § 405 (g).  Substantial evidence means "more than a mere scintilla,"

28  *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v.*

1  *Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable

2  mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.  The record

3  as a whole must be considered, weighing both the evidence that supports and the evidence that

4  detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985).

5  In weighing the evidence and making findings, the Commissioner must apply the proper legal

6  standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold

7  the Commissioner's determination that the claimant is not disabled if the Secretary applied the

8  proper legal standards, and if the Commissioner's findings are supported by substantial evidence.

9  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

10  ## REVIEW

11  In order to qualify for benefits, a claimant must establish that he is unable to engage in

12  substantial gainful activity due to a medically determinable physical or mental impairment which has

13  lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C.

14  § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of such

15  severity that he is not only unable to do his previous work, but cannot, considering his age,

16  education, and work experience, engage in any other kind of substantial gainful work which exists

17  in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).  The

18  burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir.

19  1990).

20  Here, Plaintiff argues that the ALJ's findings are not supported by substantial evidence and

21  are not free of legal error because the ALJ failed to: (1) adopt the VA's disability rating; (2) find his

22  PTSD as a severe impairment; and (3) properly evaluate his credibility.

23  ## DISCUSSION

24  *1.    VA Disability Rating*

25  Plaintiff asserts that the ALJ erred by failing to give proper weight to the VA rating decision

26  of January 21, 2005, which granted him a "total disability evaluation" as a result of Plaintiff's

27  service-connected PTSD. AR 122-24.  (Doc. 11 at 10).

28

Although a VA rating of disability does not necessarily compel the Social Security Administration to reach an identical result, 20 CFR §§ 404.1504, 416.904, the ALJ must ordinarily give great weight to a VA determination of disability. *McCartey v. Massanari*, 298 F3d 1072, 1076 (9th Cir. 2002); SSR 06-03p, 2006 SSR LEXIS 5, 2006 WL 2329939, at *7. The VA and SSA criteria for determining disability are not identical, and the ALJ may give less weight to a VA disability rating based on persuasive, specific, and valid reasons which are supported by the record. *Id.* The acquisition of new evidence or a properly justified re-evaluation of old evidence may constitute a persuasive, specific, and valid reason supported by the record. *Valentine v. Astrue*, 574 F.3d 685, 695 (9th Cir. 2009).

The ALJ gave the following reason for discounting the VA rating:

> [Plaintiff] indicates he has been been granted a total disability evaluation. Exhibit 9f indicates that entitlement to a pension is granted, but the rating is deferred, and a decision as to service connection is deferred for additional evidence to include VA examinations. His receipt of the funds indicates that the pension has been granted. However, the issues and rule that apply to such pensions are different than those that apply to Social Security cases, and those decisions are not binding in the current proceeding.

AR 16.

The ALJ also provided an analysis of Plaintiff's PTSD related symptoms. AR 15. The ALJ later concluded that:

> There is no substantial medical evidence of an increase in disability due to a mental condition, such as PTSD. The materials from Gail Hendershot were submitted and considered in the earlier hearing decision. In addition, Ms. Hendershot seems to have checked almost all the boxes in the "markedly limited" area on the form report, which does not seem at all realistic in light of the longitudinal record as a whole, especially considering the daily activities of the claimant, and his statements to the staff of the Veterans' Administration to the effect that he does not need treatment, and he has been taking no medication for psychological problems. The opinions expressed by the State agency medical consultants regarding mental issues are much more consistent with the record. I give little weight to the opinion expressed by Ms. Hendershot, and instead give substantial weight to the opinions of the State agency medical consultants.

AR 16.

The ALJ's rejection of the VA's disability rating is valid because the ALJ relied on additional evidence which was not available to or considered by the VA. The medical evaluations performed by the State agency consultants—which do not reflect disabling impairments related to PTSD—

occurred after the VA's disability determination. The ALJ relied on two negative screens for PTSD in December 2006 and September 2008 as well as Plaintiff's statements to medical personnel at those times that he did not need treatment.  AR 16, 250-51, 349-51. In 2005, at the time of its rating decision, the VA did not have access to this evidence reflecting that the Plaintiff's PTSD symptoms had improved. *See Valentine*, 574 F.3d at 695 (acquisition of new evidence or a properly justified reevaluation of old evidence constituted a valid reason for according little weight to a VA disability rating).  Given this evidence, which was unavailable to the VA, the ALJ was justified in disregarding the prior VA disability rating. *Id.*

Thus, the ALJ reasonably considered the VA rating and provided persuasive, specific and valid reasons, all supported by the record, for giving it less weight. Accordingly, the ALJ's rejection of the VA disability rating is not erroneous.

### 2.   *Step Two Findings*

Next, Plaintiff asserts the ALJ committed error in finding his PTSD does not amount to a legally severe impairment.  (Doc. 11 at 12).  Defendant counters the ALJ properly identified Plaintiff's severe impairments, in making his finding regarding RFC. (Doc. 12 at 7-10).

A plaintiff bears the burden of proving that he or she is disabled.  *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999); 20 C.F.R. § 404.1512.  The mere diagnosis of an impairment is not sufficient to sustain a finding of disability. *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985); *see also Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) (mere existence of impairment is insufficient proof of disability).

A person is disabled if his impairments are severe and meet the durational requirement of twelve months. 20 C.F.R. §§ 404.1505, 404.1520(a).  A severe impairment is one that significantly limits the physical or mental ability to perform basic work activities.  20 C.F.R. § 404.1520(c). Examples of basic work activities include carrying out simple instructions, responding appropriately to usual work situations, dealing with changes in a routine work setting, and performing ordinary physical functions like walking and sitting.  20 C.F.R. § 404.1521(b).

An impairment or combination of impairments is found "not severe" and a finding of "not disabled" is made at step two if the medical evidence establishes only a slight abnormality or a

10

combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work, even if the individual's age, education, or work experience were specifically considered (i.e., the person's impairment(s) has no more than a minimal effect on his or her physical or mental ability(ies) to perform basic work activities).   Social Security Ruling ("SSR") 85-28.  In determining whether an impairment or combination of impairments is "severe," an ALJ should carefully examine the medical findings that describe the impairments and make an "informed judgment" about the limitations and restrictions the impairment and related symptoms impose on the person's physical and mental ability to do basis work activities.  SSR 96-3p.  The step two inquiry is a *de minimis* screening device to dispose of groundless or frivolous claims.  *Bowen v. Yuckert,* 482 U.S. 137, 153-154 (1987).

The ALJ properly applied 20 C.F.R. § 404.1520, and found that Plaintiff's PTSD was not severe based upon findings of: (1) no limitation on activities of daily living in light of Plaintiff's testimony regarding his hobbies; (2) mild limitation in social functioning based upon Plaintiff's socializing with family, friends and churchgoing; (3) mild limitations in concentration persistence and pace, based upon the Plaintiff's ability to concentrate well enough to drive a car, go boating and fishing, and repair cars; and (4) no episodes of decompensation. AR 12.

Specifically, ALJ Marsden found Plaintiff was capable of basic mental work related activities for the following reasons:

> The claimant's medically determinable mental impairment of post traumatic stress disorder (PTSD) did not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and was therefore non-severe.
>
> In making this finding, I have considered the four broad functional areas set out in the disability regulations for evaluation of mental disorders and in section 12.00C of the Listing of Impairments.  These four broad functional areas known as the "paragraph B" criteria.
>
> The first functional area is activities of daily living.  In this area, the claimant had no limitation.  The claimant testified that he takes care of his own personal needs, he has hobbies, owns a boat and likes to go boating and fishing.
>
> The next functional area is social functioning.  In this area, the claimant had mild limitation.  The claimant socialize with family, has friends and goes to church, although he does not attend church as frequently as he formerly did.

The third functional area is concentration, persistence or pace.  In this area, the claimant had mild limitation.  He concentrated well enough to drive a car, go boating and fishing and do mechanical repairs on automobiles.

The fourth functional area is episodes of decompensation.  In this area, the claimant had experienced no episodes of decompensation which have been of extended duration.  There is no medical evidence of any episodes of decompensation.  The records of the Veteran's Administration show a rather stable mental condition, with no medication and no complaints.  The record shows improvement, especially regarding his 95% decrease in the use of alcohol.

Because the claimant's medically determinable mental impairment caused no more than "mild" limitation in any of the first three functional areas and "no" episodes of decompensation which have been of extended duration in the fourth area, it was non-severe.

AR 12, (citations omitted).

The ALJ's findings regarding Plaintiff's limitations is also supported by the 2007 opinions of two state agency medical consultants, Dr. Ginsburg and Dr. Aquino-Caro, both of whom completed Psychiatric Review Technique Forms and concluded that Plaintiff had no medically determinable psychological impairments, and therefore had no limitations from PTSD. AR 161, 172.

The ALJ properly found that Ms. Hendershot's opinion was entitled to little weight, noting that it had been considered in the 2002 ALJ decision.  AR 16.  The 2002 ALJ decision was *res judicata* on the issues of Plaintiff's disability claim, and the rejection of Ms. Hendershot's opinion. AR 9; *Lester v. Chater*, 81 F.3d 821, 827 (9th Cir. 1996).  However, even if Plaintiff's challenge was not barred by *res judicata*, the ALJ in 2002 properly discounted the opinion.  The ALJ noted that it was based on a one-time assessment from Ms. Hendershot who evaluated Plaintiff after an initial referral.  AR 61, 360.  20 C.F.R. § 404.1527(d)(2), (d)(2)(I) (specifying that an ALJ should give more weight generally to a treating source than an examining source and stating that "[g]enerally the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion").  Although Plaintiff testified that Ms. Hendershot went on to treat him as a therapist, at the time of the relevant evaluation, she had seen him only once. AR 43.

The ALJ also correctly characterized Ms. Hendershot's opinion as reliant upon Plaintiff's subjective complaints. AR 61, 362-63, 372-74. *See, e.g., Bayliss v. Barnhart*, 427 F.3d 1211, 1217

1  (9th Cir. 2005) (holding that an ALJ may reject a physician's finding that is unsupported by the

2  record or premised on a claimant's properly discredited subjective complaints).

3      In addition to relying on the prior ALJ's rejection of the Hendershot opinion, the current

4  ALJ considered Ms. Hendershot's opinion again in light of the new evidence since the 2002

5  decision. AR 16. The ALJ properly placed little weight on the limitations Ms. Hendershot assessed

6  because they were inconsistent with Plaintiff's subsequent statements to VA personnel that he did

7  not need treatment (AR 16, 250-52, 351), inconsistent with Plaintiff's daily activities (AR 16, 24-26,

8  39), inconsistent with the fact that Plaintiff did not take any medication for psychological problems

9  (AR 16, 35-36), and inconsistent with the subsequent state agency medical consultant opinions

10 concluding that Plaintiff had no medically determinable mental impairment whatsoever (AR 16, 161,

11 172). 20 C.F.R. § 404.1527(d)(2)(4) ("the more consistent an opinion is with the record as a whole,

12 the more weight we will give to that opinion"). The ALJ provided more than adequate reasons for

13 giving little weight to this opinion.

14     ALJ Marsden carefully evaluated the medical findings offered for Plaintiff's mental

15 impairment and assessed Plaintiff's ability to perform basic mental work activities. The medical

16 record establishes that Plaintiff's mental impairments are slight abnormalities that would have no

17 more than a minimal effect on his ability to work. *Smolen v. Chater*, 80 F.3d at 1290. Therefore,

18 the ALJ's findings are supported by substantial evidence and are free of legal error.

19         ***3.    Credibility Findings***

20     Next, Plaintiff complains the ALJ failed to properly assess his credibility as it relates to

21 limitations arising from his PTSD. (Doc. 11 at 13). Specifically, Plaintiff argues that the ALJ erred

22 by discounting the limitations assessed in Ms. Hendershot's 2002 opinion and the VA disability

23 rating. *Id.*   The Commissioner asserts that the ALJ provided sound reasons to discredit Ms.

24 Hendershot's opinion, the VA rating, and Plaintiff's subjective complaints. (Doc. 12 at 11-12).

25     Generally, "conflicts between a [claimant's] testimony of subjective complaints and the

26 objective medical evidence in the record" can constitute "specific and substantial reasons that

27 undermine . . . credibility." *Morgan v. Comm'r of the Soc. Sec. Admin*, 169 F.3d 595, 600 (9th Cir.

28 1999); *see also* SSR 96-7p, 1996 SSR LEXIS 4, at *2-3 (the ALJ "must consider the entire case

1   record, including the objective medical evidence" in determining credibility, but statements "may
2   not be disregarded solely because they are not substantiated by objective medical evidence").

3         Here, the ALJ did not base her decision solely on the fact that the medical record did not
4   support the degree of symptoms alleged by Plaintiff. Nevertheless, to rely upon the medical evidence,
5   "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain
6   what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir.
7   2001).

8         Here, for example, the ALJ noted that Ms. Hendershot checked all the boxes in the "markedly
9   limited" area on the mental assessment, "which [did] not seem at all realistic in light of the
10  longitudinal record as a whole." AR 16. Plaintiff's purported limitations were contradicted by his
11  extensive daily activities. Plaintiff testified that he fished in the mountains and worked on his boat,
12  and stated that he spent "all [his] summertime playing and the wintertime maintaining [his boat] as
13  well as [he] can." AR 25-26. He testified that he "stay[ed] pretty focused" building his boat and
14  working on his cars. AR 39. Plaintiff's abilities to concentrate on these types of daily activities is
15  inconsistent with disabling mental symptoms. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir.
16  2002).

17        Second, the ALJ noted Plaintiff's statements to VA staff that he did not need treatment, as
18  well as the fact that he was not taking any medication for PTSD. AR 15, 16. 20 C.F.R. §§
19  404.1529(c)(iv) (ALJ should consider type of any medication taken to alleviate symptoms);
20  404.1529(c)(3)(v) (ALJ should consider treatment, other than medication, that Plaintiff has received
21  for relief of pain or other symptoms); *Meanel,* 172 F.3d at 1114 (ALJ may discredit a Plaintiff's
22  testimony for lack of consistent treatment). In 2006, Plaintiff reported to VA personnel that he was
23  "ok" and did not need to see a psychologist, and Dr. Kyin Kyin Oo signed a progress note concurring
24  that no further evaluation regarding PTSD was needed at that time. AR 250-51. Likewise, the ALJ
25  noted in 2008, Plaintiff said he was treated at Tulare Mental Health for two years and now he can
26  control himself, and said that he does not need to "see mental health people." AR 15. He was
27  offered psychological services that day, but said it was not necessary. AR 15, 351. Plaintiff also
28  testified that he was not taking any medication for PTSD, and reported no medications for mental

1 impairments in his earlier statements.  AR 35-36, 142, 151. In light of this evidence, the ALJ

2 properly relied upon Plaintiff's course of treatment to discredit allegations of disability. *Meanel*, 172

3 F.3d at 1114.

4      Finally, a lack of medical evidence cannot form the sole basis for discounting symptom

5 testimony, but it is a factor that the ALJ can consider in the course of evaluating a claimant's

6 credibility. 20 C.F.R. § 404.1529(b); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). As

7 discussed *supra*, Plaintiff's PTSD screens in 2006 and 2008 were negative.  AR 250-51, 351.

8 Furthermore, two state agency medical consultants concluded on Psychiatric Review Technique

9 Forms that Plaintiff had no medically determinable mental impairment. AR 161, 172.

10      Given the considerations made by the ALJ, the ALJ properly made "a credibility

11 determination with findings sufficiently specific to permit the court to conclude the ALJ did not

12 arbitrarily discredit [the] claimant's testimony." *Thomas*, 278 F.3d at 958.  Consequently, the adverse

13 credibility determination was proper.

## CONCLUSION

15      Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial

16 evidence in the record as a whole and is based on proper legal standards.  Accordingly, this Court

17 DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.

18 The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue,

19 Commissioner of Social Security and against Plaintiff, Richard Francis Baker.

20      IT IS SO ORDERED.

21 **Dated:   February 21, 2012**           **/s/ Barbara A. McAuliffe**
UNITED STATES MAGISTRATE JUDGE